James E. Montell and Edwin E. Montell, trading
as Montell & Company *vs.* The Consolidation
Coal Company.

*Construction of Charters of Coal Mining Companies.*

In an action to recover damages of The Consolidation Coal Company for taking
up and discontinuing a part of its railroad, and refusing to carry coal mined
by the plaintiffs, the declaration alleged that The Cumberland Coal and Iron
Company was authorized by its charter to construct a railroad leading from
its mines to some convenient point on the Chesapeake and Ohio Canal, at
Cumberland; that full right and privilege was reserved by its charter to the
citizens and corporations of the State to connect any other railroads with the
roads which the company might construct or purchase, in such manner that
in the opinion of the Board of Public Works, no injury would be done by
such connection to the railroad of said company; that said company pur-
chased a road leading from "The Eckhart Mines" to the Canal, and con-
structed a railroad from said mines, to the mine of the company called "The
Astor Mine," and carried coal and all kinds of merchandise upon said last
mentioned road for all parties, and charged therefor the rates fixed by its
charter; that the defendant was also authorized by its charter to construct
or purchase such railroads as its directors might deem necessary for its busi-
ness, and that said company was required to transport upon such railroad
all persons and property offered for transportation at certain rates fixed by
the charter; that the defendant purchased from The Cumberland Coal and
Iron Company the railroads constructed and purchased by said company,
and by virtue of said purchase became liable to perform all the duties in
reference to said railroads prescribed in the charter of The Cumberland Coal
and Iron Company, and did after such purchase, carry coal and merchandise
for all persons at the rates allowed by law; that Sloan and others, owners
of "The Spruce Hill Mines," in accordance with the provisions of the
charter of The Cumberland Coal and Iron Company, and with the knowledge
and consent of said company, built a dump-house, siding and tram-road

Montell & Co. *vs.* Consolidation Coal Co.

leading from "The Spruce Hill Mines" to the railroad of said company, and paid to it the sum of $200, for a right of way over its land to said road, and expended $3000 in and about the same, and thus connected "The Spruce Hill Mines" with the road of said company; that they shipped large quantities of coal from "The Spruce Hill Mines" over said road and paid The Cumberland Coal and Iron Company the freight therefor as provided by its charter; that The Spruce Hill Coal Company was incorporated in 1865, and purchased of Sloan and others "The Spruce Hill Mines," and after the purchase shipped also large, quantities of coal over said road; that in 1873, the plaintiffs purchased "The Spruce Hill Mines," tram-road, siding and dump-house, and all rights and privileges and appurtenances thereto, and notified the defendant of their purchase, and requested it to furnish cars and transport their coal to Cumberland, but the defendant refused, and after said notice tore up its road and destroyed its connection with the tram-road of the plaintiffs, whereby they sustained damage, &c. On demurrer to this declaration, it was HELD:

1st. That the defendant, neither under its own charter, nor under the charter of The Cumberland Coal and Iron Company, was bound, irrespective of its own interest, to maintain and operate its road for the benefit of others who had formed connections with it.

2nd. That the power to build a railroad was conferred upon the defendant primarily for its benefit, with the privilege reserved to others to send their products over the road so long as the company saw proper to use it for itself; but if the business of the company no longer justified it to operate the road, or if it saw fit to adopt some other more convenient and less expensive mode of sending the products of its mines to market, it had the right to discontinue the use of the road, and without incurring any liability to the plaintiffs.

APPEAL from the Circuit Court for Allegany County.

The original declaration consisting of two counts, was ruled bad on demurrer by the defendant, and an amended *narr.* was filed; to this amended *narr.* the defendant also demurred, but the demurrer was overruled. After the overruling of the demurrer, the defendant filed eight pleas—the first being simply the general issue, and the others special pleas. The plaintiffs joined issue on the first plea; replied to the fourth, fifth and eighth, and demurred to the second, third, sixth and seventh. The defendant

rejoining, joined issue upon the plaintiffs' demurrers; joined issue upon the replication to the fifth plea, and demurred to the replication to the fourth and eighth pleas. The Court overruled the demurrers to the second, third and seventh pleas; sustained the demurrer to the sixth plea, also the defendant's demurrer to the replication to the fourth and eighth pleas, and gave judgment for the defendant on the demurrers.

From this judgment the plaintiffs appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER, ALVEY and ROBINSON, J.

*J. H. Gordon* and *William Walsh,* for the appellants.

*John P. Poe,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This suit is brought to recover damages of the appellee for taking up and discontinuing part of its railroad, and refusing to carry coal mined by the appellants.

The declaration alleges that the Cumberland Coal and Iron Company was authorized by its charter to construct a railroad leading from its mines to some convenient point on the Chesapeake and Ohio Canal at Cumberland. That full right and privilege was reserved by its charter to the citizens and corporations of the State to connect any other railroads with the road which the company might construct or purchase, in such manner, that in the opinion of the Board of Public Works, no injury would be done by such connection to the railroad of said company. That said company purchased a road leading from the Eckhart mines to the canal, and constructed a railroad from said mines to the mine of the company called the Astor Mine, and carried coal and all kinds of merchandise upon said last mentioned road for all parties, and charged therefor the rates fixed by its charter.

That the defendant corporation was also authorized by its charter to construct or purchase such railroads as its directors might deem necessary for its business, and that said company was required to transport upon such railroad all persons and property offered for transportation, at certain rates fixed by the charter.

That the defendant corporation purchased from the Cumberland Coal and Iron Company, the railroads constructed and purchased by said company, and by virtue of said purchase became liable to perform all the duties in reference to said railroads prescribed in the charter of the Cumberland Coal and Iron Company, and did after said purchase carry coal and merchandise for all persons at the rates allowed by law.

That Alexander Sloan and others, owners of the Spruce Hill Mines, in pursuance of the provisions of the charter of the Cumberland Coal and Iron Company, and with the knowledge and consent of said company, built a dump-house, siding and tram-road leading from the Spruce Hill Mines, to the railroad of said company, and paid to it the sum of two hundred dollars, for a right of way over its land to said road, and expended three thousand dollars, in and about the same, and thus connected the Spruce Hill Mines with the road of said company. That they shipped large quantities of coal from the Spruce Hill Mines over said road and paid the Cumberland Coal and Iron Company the freight therefor as provided by its charter.

That the Spruce Hill Coal Company was incorporated in 1865, and purchased of Sloan and others the Spruce Hill Mines, and after the purchase shipped also large quantities of coal over said road.

That in 1873 the appellants purchased the Spruce Hill Mines, tram-road, siding and dump-house, and all rights and privileges and appurtenances thereto, and notified the defendant of their purchase, and requested it to furnish cars and transport their coal to Cumberland, but the defen-

dant refused, and after said notice tore up its road and destroyed its connection with the tram-road of the appellants, whereby they sustained damage, &c.

To this declaration the appellee, defendant below, interposed a general demurrer.

The declaration does not allege a *special contract* between the appellants or those under whom they claim, and the Cumberland Coal and Iron Company, or the defendant corporation, whereby the latter became bound to transport the coal mined by the appellants. Conceding then, for the purposes of this case, that the connection made under the arrangement with Sloan and others in 1864, to be valid and binding in all respects, as if made in the mode and manner prescribed by the charter of the Cumberland Coal and Iron Company ; and conceding further that an action of damages would lie at the instance of the appellants against the appellee for taking up and discontinuing the use of its road, a question we are not to be understood as deciding, it is clear that such an action can be maintained only on the theory of a general obligation or duty resting upon the appellee to maintain and operate its road for the benefit of the public, or some special obligation imposed by its charter, or the charter of the Cumberland Coal and Iron Company to maintain and operate it for the benefit of such persons or companies as may have formed connections with it.

In either case then the question whether such obligation rests upon the appellee must depend upon the charter of the Cumberland Coal and Iron Company, and the charter of the appellee in pursuance of the provisions of which the road in question was built and purchased, and the connection of the appellants as set forth in the declaration was made.

Section 1 of chapter 214, of the Act of 1840, incorporating the Cumberland Coal and Iron Company, conferred upon said company all the powers and rights necessary to

enable it to carry on the manufacture of iron, and the mining of coal, and for transporting the products of their mines, lands and manufactories to market.

Section 6 of the original, and sec. 5 of the amended charter (Act of 1852, ch. 93,) authorizes the company to construct or purchase a railroad leading from its mines to some point on the Chesapeake and Ohio Canal at Cumberland, to enable it to transport the produce of its mines and the produce of the counties through which its road should pass, to market, with a proviso reserving to the citizens of the State and other corporations the right to connect with its road if in the opinion of the Commissioners of Allegany County, or by the amended charter the Commissioners of Public Works, no prejudice would be done by such connection to the road of the company.

Here then is a charter granted to a company for the purpose of carrying on the business of manufacturing iron and the mining of coal, with the right to build a railroad from its mines to the canal to enable it to send its products to market, reserving at the same time to the citizens of the State, and other companies the right to transport their produce over the road when built, at certain rates fixed by the charter.

So the question presented in this case, is not whether any railroad chartered for the general purpose of transporting freight and passengers, may by its own election and in order to promote its own interests, abandon, or discontinue the use of part of its road, but whether the appellee under its charter, or under the charter of the Cumberland Coal and Iron Company, both being primarily coal mining companies, with the privilege of constructing a railroad from their mines to the canal, to enable them thereby to send their products to market, are bound to maintain and operate such road for the benefit of others who have formed connections with it, and irrespective of their own interests?

It cannot be said that such an obligation is imposed in express terms by the charter of the Cumberland Coal and Iron Company. No provision is to be found in the charter requiring it to maintain and operate the road for the benefit of others, nor can such an obligation be fairly inferred. The charter is the contract between the State and the company, and in its construction we must be governed by the well settled rules of interpretation applicable to all other contracts.

Incorporated as a coal mining company, with the incidental privilege of constructing a railroad from its mines to the canal, we can hardly suppose the company accepted such a provision with the understanding that it would be obliged to maintain and operate such road in all time to come, without regard to its business requirements and irrespective of its own interests. Nor can it be said by any fair rule of construction that a burden so unjust and unreasonable is imposed by its charter. So long as the company operated the road for its own use, in transporting to market the produce of its mines and lands, it was bound to carry the produce of other companies and of the counties through which the road passed. If its mines however became exhausted or if the business of mining coal and manufacturing iron became unprofitable, or the best interests of the company required that it should abandon the road or discontinue its use, there is no obligation upon it to operate the road in the interests of others.

The fact that the appellants made a connection with it by means of a tram-road and built a dump-house and paid two hundred dollars for a right of way over its lands, does not in any manner affect the question. The appellants did not thereby acquire a perpetual right to compel the company to maintain the road for their benefit. The declaration does not allege the two hundred dollars was paid for a right of way over the company's road, but was paid for a right merely over its land, to connect with the road. In

making a connection they knew, or are presumed to have known, that their right to transport freight over the road was subordinate to the paramount right of the company to discontinue the use of the road whenever its interests required it; and that the utmost they could claim by such connection was the right to transport their freight so long as the company used the road for transporting their own coal and produce. So much for the charter of this company. How then is the question affected by the charter, (Act of 1860, ch. 265) of the defendant corporation? Here again we find a *coal mining company*, authorized to build or purchase a railroad to enable it to send its coal to market, requiring it at the same time to transport persons and freight at the rates charged by the Baltimore and Ohio Railroad Company. There is not a line in its charter from which it can be inferred that the Legislature in granting it, intended to compel the company to operate this railroad one day longer than their own interests required it. On the contrary, it is plain that the power to build a railroad was conferred primarily for the benefit of the company, with the privilege reserved to others to send their products over the road, so long as the company saw proper to use it for itself. If however their business no longer justified them to operate the road, or if they saw fit to adopt some other more convenient and less expensive mode of sending the products of their mines to market, they had the right to discontinue the use of it, and this too without incurring any liability to the appellants.

So, assuming all the facts stated in the declaration to be true, we are of opinion they are insufficient to maintain this action, and the demurrer ought therefore to have been sustained.

Under the Act of Assembly, the appellee is entitled to the benefit of the question raised by the demurrer, and being of the opinion that it ought to have been sustained, it becomes unnecessary to consider other questions raised

by the pleadings, and inasmuch as no injury was done to the appellants by overruling the demurrer, the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 14th June, 1876.)